UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| DOLBY LABORATORIES LICENSING CORPORATION, et al., | Case No.   24-cv-04660-EJD |
| Plaintiffs, | **ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS** |
| v. | |
| ROKU, INC., | Re: ECF No. 47 |
| Defendant. | |

Dolby Laboratories Licensing Corporation and Dolby International AB (collectively, "Dolby") bring this action for breach of contract, copyright infringement, patent infringement, negligent misrepresentation, and fraudulent concealment against Roku, Inc. ("Roku"). First Am. Compl. ("FAC"), ECF No. 41. Dolby's various claims all stem from Roku's alleged breach of software license agreements and efforts to conceal such breach. Before the Court is Roku's motion to dismiss Dolby's FAC. Mot., ECF No. 47. The motion was fully briefed on December 13, 2024. Opp., ECF No. 48; Reply, ECF No. 49.

Upon careful consideration of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Roku's motion to dismiss.

## I.      BACKGROUND

This is a dispute between a licensor and its licensee. Roku, the licensee, sells hardware and software products that facilitate internet streaming of content onto televisions. FAC ¶¶ 16, 40. On the software side of its business, Roku sells advertising and distributes streaming services via its streaming device operating system known as "Roku OS." *Id.* ¶ 40, 48–51. As for hardware,

Roku sells "devices" or "players," including Roku-branded televisions, audio devices, and accessories. *Id.* ¶¶ 40, 43.

Dolby, the licensor, develops and licenses audio and video technology to improve entertainment experiences. *Id.* ¶ 21; Opp. 3. Dolby generally does not sell products directly to consumers, opting instead to license its technologies through a network of licensee partners. FAC ¶¶ 22–23. As relevant here, Dolby's licensee network includes technology companies like Roku, system-on-a-chip ("SoC") manufacturers, and third-party original equipment manufacturers ("OEMs")—*e.g.*, television manufacturers. *See id.* ¶ 99.

There are two software license agreements at issue here. *Id.* ¶¶ 57–58. On May 12, 2015, the parties entered into the Interoperability License Agreement ("ILA"), which gave Roku limited rights to use certain Dolby intellectual property ("Dolby Technologies") for testing in Roku's middleware—*i.e.*, Roku OS. *Id.* ¶ 57; ILA § 3.1, ECF No. 32-4. The license only allowed Roku to verify that Roku OS was compatible with Dolby Technologies embodied in products that Roku received from upstream SoC manufacturers and products that OEMs built for end users. *Id.* Third-party SoC manufacturers and OEMs have their own separate license agreements with Dolby that allow them to implement and distribute Dolby Technologies in their products. FAC ¶ 57.

On September 8, 2016, Dolby and Roku then entered into the System License Agreement ("SLA"), which allowed Roku to design, develop, use, manufacture, and sell its own products containing certain licensed Dolby Technologies. *See id.* ¶ 58. The SLA required Roku to report its sales of products that contain licensed Dolby Technologies on a quarterly basis and pay royalties pursuant to a set schedule. *Id.* ¶¶ 59, 116–17 (quoting SLA §§ 4.2, 4.6, ECF No. 32-5). The SLA applied only to devices that Roku sold to end users, not to middleware like Roku OS. *Id.* ¶ 59. The agreement also gave Dolby the right to audit Roku to ensure compliance with the latter's contractual obligations. *Id.* ¶¶ 59, 119 (quoting SLA § 4.7).

Dolby alleges that beginning in 2015, Roku violated the ILA and infringed Dolby's intellectual property rights. *Id.* ¶¶ 64–73. Roku allegedly included copies of Dolby Technologies in Roku OS and in further updates to the operating system software that were pushed directly to

United States District Court
Northern District of California

end users without authorization from Dolby.  *Id.*  One such update, Roku OS 9.0, allegedly included an implementation of Dolby's AC-3 audio compression technology that Roku claims it received from an unlicensed third-party source.  *Id.* ¶¶ 74–79.

Dolby further avers that it did not uncover the alleged misconduct until years after the infringement began, because the nature of Roku's software and representations concerning its software distributions misled Dolby into believing no such misconduct was occurring.  On March 6, 2020, two Roku product managers spoke with a Dolby employee and allegedly denied that Roku was distributing Dolby Technologies in Roku OS.  *Id.* ¶ 81–82.  Dolby asserts that this was materially misleading and that it relied on the misrepresentation.  *Id.*  Nearly a year later, Dolby exercised its contractual right and attempted to audit Roku for the 2016-2020 period to ensure compliance with the ILA, but Roku resisted the requests for information.  *Id.* ¶¶ 84–85.  Roku instead attempted to limit the scope of the audit, arguing that Roku OS did not fall within the scope of any contractual audit requirement.  *Id.* ¶ 85.  On February 18, 2022, Roku provided a partial list of third parties to whom Roku provided Dolby Technologies.  *Id.* ¶ 86.  Dolby then realized that Roku's prior statements were false, because the existence of this list was inconsistent with Roku's March 2020 representation that it was not distributing Dolby Technologies.  *Id.*  From 2022 through 2023, Roku produced more information but denied that it had any additional payment obligations to Dolby based on any alleged unlicensed sales of Dolby Technologies.  *Id.* ¶¶ 86–91.  The parties continued audit discussions through June 2024, the conclusion of which resulted in Dolby filing the instant lawsuit in August 2024.  *Id.* ¶¶ 91–93.

## II.      LEGAL STANDARD

Roku seeks dismissal of Dolby's FAC under Rule 12(b)(6).  To survive Roku's motion, the FAC "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts alleged allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct beyond a mere possibility.  *Id.*  The Court does not, however, accept conclusory allegations or

draw unreasonable inferences from the allegations. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## III. DISCUSSION

Roku's motion groups the causes of action in the FAC into four categories: (1) breach of contract [Counts One through Four], (2) copyright infringement [Counts Five and Six], (3) patent infringement [Count Seven], and (4) negligent misrepresentation and fraudulent concealment [Counts Eight and Nine]. The Court adopts the same organization in its analysis.

### A. Breach of Contract (Counts One–Four)

Roku asserts several arguments to dismiss Dolby's breach of contract claims. First, Roku argues that Counts One through Three are time-barred by the relevant statute of limitations. Roku then argues that Count Two also fails because it does not allege a violation of the SLA. Roku also contends that Count Three, breach of the implied covenant, should be dismissed as duplicative of Dolby's breach of contract claims. Lastly, Roku argues that Count Four, failure to comply with audit obligations, should be dismissed because it contradicts the express terms of the SLA. The Court addresses each of Roku's argument in turn, together with Dolby's arguments in opposition.

#### 1. Counts One–Three: Time Bar

Claims for breach of a written contract or breach of the implied covenant of good faith and fair dealing based on contract are subject to California's four-year statute of limitations. Cal. Civ. Proc. Code § 337(a); *Fehl v. Manhattan Ins. Grp.*, 2012 WL 10047, at *4 (N.D. Cal. Jan. 2, 2012) (affirming that the four-year statute of limitations applies to breach of the implied covenant of good faith and fair dealing when the claim "sounds in contract"). California's statute is strict: it begins to run when a cause of action accrues—*i.e.*, at the time of the breach— "regardless of whether any damage is apparent or whether the injured party is aware of [its] right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citations omitted). Courts may dismiss a claim based on the running of the statute of limitations "only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir.

1996) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)).

Here, Roku argues that three of Dolby's contract claims (Counts One through Three) are time-barred under the statute. These claims are failure to pay royalties, breach of representation and warranty, and breach of the implied covenant, respectively. Dolby alleges that Roku breached its contractual obligations by distributing unlicensed Dolby Technologies in updates to Roku OS as early as 2015, so Dolby's contract claims presumably accrued at that time. *See* FAC ¶ 72. Based on this accrual date, the statute of limitations for Dolby's breach of contract claims ran in 2019, several years before Dolby filed the instant suit in August 2024. Mot. 8.[1]

Dolby counters by invoking several tolling doctrines that would alter this outcome:

### a. Discovery Rule

First, Dolby argues that the discovery rule applies. The discovery rule tempers California's otherwise strict statute by delaying the accrual of a cause of action until "plaintiff discover[s] or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, 2021 WL 5919821, at *4 (N.D. Cal. Dec. 15, 2021) (quoting *Perez-Encinas*, 468 F. Supp. 2d at 1134). Courts consider three factors to determine whether the discovery rule applies: (1) whether "the injury or the act causing the injury, or both, have been difficult for the plaintiff to detect;" (2) whether "the defendant has been in a far superior position to comprehend the act and the injury;" and (3) whether "the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Id.* (citation omitted). The plaintiff bears the burden of showing that the discovery rule applies. *Id.* Once the plaintiff has done so, "it must then demonstrate that it exercised reasonable diligence to discover all of the facts essential to the cause of action." *Id.* (cleaned up).

Here, Dolby has met its initial burden of showing the discovery rule applies. Dolby explains that it was difficult, if not impossible, for it to detect Roku's alleged breach, because

---

[1] Pincites to the parties' papers correspond to the ECF-stamped pagination rather than the pagination provided by the parties.

1  Roku OS is fully encrypted.  Opp. 15.  The encryption prevented Dolby from accessing or

2  investigating Roku OS's code for any signs of breach and placed Roku in a far superior position to

3  understand the inclusion of Dolby Technologies in Roku OS.  Assuming Roku did distribute

4  Dolby Technologies with Roku OS, Roku's alleged misrepresentations during the parties' March

5  2020 meeting and efforts to resist Dolby's audit through 2021 evidence Roku's belief that Dolby

6  would have remained ignorant of such misconduct.[2]  Dolby submits that the discovery rule

7  delayed the accrual date for its contract claims until February 18, 2022, when Roku provided a

8  partial list of third parties to whom Roku had provided Dolby Technologies and Dolby became

9  aware of the alleged breach.  *Id.* at 15–16.

10  Roku counters that, even if the discovery rule applies, Dolby was not reasonably diligent in

11  discovering the breach.  Roku argues that Dolby had inquiry notice of the alleged breach before

12  2019, and any failure to uncover the breach is a result of Dolby's failure to exercise reasonable

13  diligence.  Mot. 15–17; Reply 8–10.  This argument hinges on Dolby's allegations that, pursuant

14  to contract, Dolby's SoC and OEM licensees are required to tell Dolby how and to whom they are

15  distributing Dolby Technologies.  FAC ¶¶ 24–26.  Dolby therefore should have learned of the

16  alleged breach from its SoC licensees upstream from Roku or OEM licensees downstream.

17  Alternatively, Dolby could have audited SoC and OEM licensees pursuant to their individual

18  license agreements to determine whether Roku was improperly distributing Dolby Technologies,

19  but either failed or chose not to do so.  *Id.*

20  The Court is unpersuaded and declines to impose such a burden on Dolby, especially as it

21  is not required by the discovery rule.  It is unclear whether Dolby's SOC and OEM licensees knew

22  that Roku was distributing Dolby Technologies in Roku OS.  And even if they did, the licensees'

23  failure to report that distribution does not change the fact that Dolby had no other reason to

24

25  _____

26  [2] Dolby contends that Roku's misrepresentations and efforts to resist auditing also prevented discovery of Roku's breach until it was too late.  However, these events occurred *after* 2019, when the statute of limitations on Dolby's contract claims had already run.  As such, for purposes of the

27  discovery rule, these events only serve as post hoc evidence that Roku believed Dolby remained ignorant of the alleged breach.

28

1    suspect Roku's breach.  For Dolby to have had inquiry notice, some event or series of events must

2    have brought the possibility of a contractual breach to Dolby's attention.  *Starz Ent., LLC v. MGM*

3    *Domestic Television Distribution, LLC*, 510 F. Supp. 3d 878, 888 (C.D. Cal. 2021), *aff'd*, 39 F.4th

4    1236 (9th Cir. 2022).  Dolby alleges that it was not aware of even the possibility of breach until

5    Roku provided limited information in response to the audit in February 2022.  Roku suggests that

6    Roku OS's encryption should have put Dolby on inquiry notice earlier on, but the mere fact that

7    software is encrypted is not inherently suspect or reason to investigate further.  Roku does not

8    suggest any prior event that would have caused Dolby to become suspicious that Roku had

9    breached their contract.

10        Further, Dolby's ability and supposed failure to audit its licensees is not dispositive of a

11   lack of diligence.  Dolby's contractual right to conduct audits does not give rise to inquiry notice

12   where, as here, a licensor had no reason to suspect a breach in the first place.  *Weatherly v.*

13   *Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004) ("Where no duty is imposed by

14   law to make inquiry, and where, under the circumstances, a prudent man would not be put on

15   inquiry, the mere fact that means of knowledge are open and not availed of does not operate to

16   give constructive notice of the facts.").  A licensor is not charged with regularly auditing its

17   licensees to uncover infringement when it has no reason to suspect such infringement is occurring.

18   *Id.* ("The duty of diligence does not create a duty to continuously monitor a [licensee] to ensure

19   compliance with its obligations, absent any reason to otherwise suspect a breach.  The law does

20   not inject such paranoia into the licensor-licensee relationship.") (citation omitted).  Without an

21   earlier event or series of events that would have triggered inquiry notice, Dolby exercised

22   reasonable diligence in discovering the breach when it did.  Accordingly, Dolby's contract claims

23   began accruing on February 18, 2022 pursuant to the discovery rule.

24                    **b.    Equitable Estoppel**

25        In addition to the discovery rule, Dolby argues equitable estoppel tolled the statute of

26   limitation.  "Equitable estoppel, also termed fraudulent concealment, halts the statute of

27   limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon

United States District Court
Northern District of California

1    which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*,

2    442 F.3d 697, 706 (9th Cir. 2006) (internal quotations omitted).  Dolby alleges that Roku falsely

3    denied the distribution of Dolby Technologies in Roku OS during the parties' March 2020

4    meeting, and Dolby's reliance on those statements prevented it from filing before 2019.  Roku

5    argues that equitable estoppel cannot apply here, because tolling "can only suspend the running of

6    a statute that still has time to run; it cannot revive a statute which has already run out." *Beckett v.*

7    *Universal Int'l Music B.V.*, 2015 WL 13918143, at *6 (C.D. Cal. Aug. 17, 2015).  Ignoring the

8    effect of other doctrines, the statute of limitations on Dolby's contract claims ran in 2019, one year

9    before the alleged concealment.  *See* FAC ¶ 72 (alleging that Roku released Roku OS 7.0 in 2015).

10   However, as discussed above, the discovery rule delayed accrual of the contract claims until 2022,

11   meaning that equitable estoppel could still apply.

12       Nonetheless, the Court declines to fully resolve the applicability of equitable estoppel at

13   this early stage.  Whether Roku misrepresented that Dolby Technologies were not being

14   distributed in Roku OS and whether Dolby relied on this representation to its detriment are factual

15   questions that are inappropriate for a 12(b)(6) motion.  *See Supermail Cargo, Inc. v. United States*,

16   68 F.3d 1204, 1206 (9th Cir. 1995) ("Because the applicability of the equitable tolling doctrine

17   often depends on matters outside the pleadings, it is not generally amenable to resolution on a

18   Rule 12(b)(6) motion." (internal quotations and citation omitted)); *McKenzie v. Fresenius Med.*

19   *Care AG*, 2005 WL 8162907, at *4 (N.D. Cal. May 23, 2005).  Accepting the FAC's allegations

20   as true, as the Court must on a motion to dismiss, Dolby has at least alleged facts to show that

21   equitable estoppel potentially applies.

22                                **c.    Continuous Accrual Doctrine**

23       Lastly, Dolby contends that Roku's breaches are severable, so at a minimum, Dolby may

24   recover for breaches that occurred four years prior to the filing of the complaint.  Opp. 7–8.  Under

25   the so-called continuous accrual doctrine, each breach of a continuing contractual obligation

26   accrues separately and triggers its own limitations period.  *E.g.*, *Ryan v. Microsoft Corp.*, 147 F.

27   Supp. 3d 868, 895 (N.D. Cal. 2015).  Dolby contends that each iteration of Roku OS that was

28   Case No.: 24-cv-04660-EJD
     ORDER GRANTING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

pushed to end users contained Dolby Technologies and constitutes a separate breach of the ILA. Opp. 8; FAC ¶ 71. However, the authorities Dolby relies on for invoking the continuous accrual doctrine tend to show that it does not apply here. In *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, for example, the court explained that the doctrine has been applied to installment contracts, leases with periodic rental payments, and contracts calling for periodic, pension-like payments. 116 Cal. App. 4th 1375, 1388 (2004). While that is not an exhaustive list, those contracts are different in nature from the license agreements here. The ILA does not call for periodic deliveries of Dolby Technologies or other products to Roku, nor do the contracts require periodic payments to Dolby. Instead, the contracts at issue here are more akin to a promise not to infringe on Dolby's intellectual property rights, an agreement that is does not create periodic, recurring obligations. *See, e.g.*, *Honey Baked Ham, Inc. v. Honey Baked Ham Co.*, 2021 WL 5990164, at *8 (C.D. Cal. Nov. 4, 2021). Accordingly, the continuous accrual doctrine is inapplicable here.[3]

*      *      *

In sum, the discovery rule delayed the accrual of Dolby's first three contract claims (Counts One through Three) to February 2022. Dolby filed its initial complaint on August 2024, within the four-year statute of limitations. Thus, Counts One through Three are not time-barred.

### 2.    Count Two: Failure to Allege Violation of SLA

In Count Two, Dolby alleges that Roku violated Section 8.3 of the SLA. In that provision, Roku represents and warrants that it would "not make, use, Sell or import a product containing Dolby IP if such product violates the intellectual property rights of [Dolby] or any third party and the primary purpose of such product is to violate the intellectual property rights of [Dolby] or any

---

[3] Dolby's argument that Roku waived the right to contest the issue of severability because it did not raise it in its motion is not well taken. The general rule barring new arguments raised for the first time in reply serves to prevent prejudice from depriving the opposition of an opportunity to respond. That concern is not present here. Though Roku did not specifically address severability in its motion, Dolby raised and explored the issue in its opposition brief, giving Roku an opportunity to rebut on reply. *Cf. Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (noting that courts may consider an issue raised in an appellant's reply if the issue had been raised by appellees).

United States District Court
Northern District of California

1    third party." FAC ¶ 129; SLA § 8.3. Roku interprets "product containing Dolby IP" as referring

2    to Roku OS, but Dolby states that the term refers instead to the unlicensed copies of Dolby

3    Technologies that Roku allegedly included in Roku OS. Opp. 19. Indeed, Dolby's FAC defines

4    "product" as such. FAC ¶ 131 ("In breach of its express warranty, Roku sold unlicensed copies of

5    Dolby technologies (*i.e.*, products) . . . ."). Roku challenges Dolby's interpretation, claiming it

6    strains credulity in the context of Dolby's allegation that Roku "exceed[ed] the scope of the

7    licenses . . . by selling products containing Dolby Technologies." Reply 13. Though the

8    distinction between "Dolby Technologies" and "Dolby IP" would benefit from further

9    clarification, the Court disagrees that Dolby's interpretation of "product" is an untenable one.

10        However, Dolby's claim still runs into another issue. Section 8.3 of the SLA requires that

11    the "product containing Dolby IP" (1) violate Dolby's intellectual property rights or those of a

12    third party, and (2) have the "primary purpose" of violating such rights. Roku's motion focuses

13    on the latter element. Mot 19. Dolby attempts to meet this element by alleging that "[b]ased on

14    information and belief, Roku's primary purpose in the distribution of these unlicensed copies of

15    Dolby Technologies was to violate the intellectual property rights of Dolby and/or a third party."

16    FAC ¶ 131. However, this is conclusory and lacks supporting factual allegations. Pleading "upon

17    information and belief" presents no problems and simply reflects the fact that "the facts are

18    peculiarly within the possession and control of [Roku]." *Soo Park v. Thompson*, 851 F.3d 910,

19    928 (9th Cir. 2017). But the allegation fails to go beyond a conclusory statement that the "primary

20    purpose" element is met and Roku has therefore breached the provision. Missing are supporting

21    allegations of facts plausibly suggesting that Roku's "primary purpose" in distributing copies of

22    Dolby technologies was to infringe Dolby's intellectual property rights. A conclusory allegation

23    that a contract term has been breached, without more, is insufficient to meet the pleading standard

24    under *Iqbal/Twombly*. *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19,

25    2018). For that reason, the Court **GRANTS** dismissal of Count Two.

26              **3.    Count Three: Duplicative Claim**

27        Roku next attacks Count Three for breach of the implied covenant as duplicative of Counts

28

One and Two.  A claim for breach of the implied covenant that is based on the same allegations and seeks the same damages as a claim for breach of contractual duty is duplicative.  *Palantir Techs. Inc. v. Abramowitz*, 2020 WL 9553150, at *3 (N.D. Cal. Feb. 13, 2020).  In its opposition brief, Dolby explains that Count Three is not based on the implied covenant of good faith and fair dealing, but on a separate implied promise not to exceed the scope of the license grant.  Opp. 20. This covenant, according to Dolby, protects know-how and other technical information that it conveyed to Roku in addition to the limited license grant.  The covenant is necessary to protect confidential and proprietary information that is otherwise not covered by intellectual property rights like patent or copyright.

Indeed, Dolby cites several cases in which courts have recognized a claim for breach of the implied covenant for this very reason.  *See Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 2016 WL 6495373, at *22 (C.D. Cal. Oct. 31, 2016), *aff'd in part*, 881 F.3d 1323 (Fed. Cir. 2018); *Eli Lilly & Co. v. Emisphere Techs., Inc.*, 408 F. Supp. 2d 668, 690 (S.D. Ind. 2006); *CO2 Techs., Inc. v. Paper-Pak Indus.*, 830 F. Supp. 2d 656, 661 (S.D. Iowa 2011).  The cited cases applied the cause of action to patent licensing situations in which the agreement did not contain an express negative covenant not to exceed the scope of a patent license.  Normally, if a patent licensee exceeds the terms of the license by practicing the patented technology in ways outside the scope of the contract, the licensor's only remedy is a suit for patent infringement.  The courts in the cited cases reasoned that this would be unfair, because the licensor's rights to the un-patented technical know-how it provided to its licensee would remain unvindicated in a patent infringement suit.

Here, in contrast, enforcement of an implied negative covenant is unnecessary.  Both the ILA and SLA contain express negative covenants not to exceed the scope of the license.  ILA § 4.1 ("Unless expressly approved by Licensor in writing, Middleware shall not contain any Dolby IP or Deliverables."); SLA § 6.2 ("Licensee agrees that it will not use the Dolby IP or any Deliverables outside the scope of the license granted hereunder or any Licensor intellectual property outside the scope of a valid License from Licensor.").  To the extent Dolby argues that

United States District Court
Northern District of California

these covenants are insufficient to protect its technical know-how outside of traditional intellectual property law, the agreements define "Dolby IP" broadly to include such information. ILA § 1.5 (defining the term to include "know-how"); SLA § 10.4 (same). Dolby's claim for breach of the implied negative covenant not to exceed the license grant in the ILA and SLA is therefore duplicative of its breach of contract claims based on violation of express provisions. The Court **GRANTS** Roku's motion to dismiss Count Three.

### 4.    Count Four: Contradiction with SLA's Terms

Roku contends that Dolby's claim for failure to comply with audit obligations should be dismissed because Dolby's audit rights do not extend to Roku OS. Mot. 21–23. Though Dolby alleges that Roku's failure to permit Dolby's audit "breached the License Agreements," referring to both the ILA and SLA, the only agreement with an audit provision is the SLA. *See* SLA § 4.7. Dolby does not dispute this in opposition. Nor does Dolby argue that the ILA and SLA should be read together as one unified set of obligations. As such, the Court limits its analysis to the audit obligation in the context of the SLA.

> Section 4.7 of the SLA reads, in relevant part, as follows:
>
> Licensee shall keep complete books and records about its operations relating to the manufacture or sale of all products that perform or embody Licensor intellectual property, in whole or in part including but not limited to all information required for Licensee's payment and reporting obligations under this Agreement . . . . Licensor or Licensor's agent(s) may inspect and make abstracts of any books or records of Licensee or its Subsidiaries relating to Licensee's manufacture or sale of any products that perform or embody the Licensor intellectual property in whole or in part . . . to verify the accuracy of Licensee's Quarterly Reports and Licensee's compliance with its obligations to report Sales of Licensed Products and make all required payments in accordance with this Agreement.

*Id.* Generally, this provision requires Roku to maintain records concerning the manufacture and sale of products containing Dolby Technologies so that Dolby can verify those numbers and the royalties owed.

Roku views the audit obligations imposed by Section 4.7 as limited to Licensed Products[4]

---

[4] "Licensed Products" is a defined term in the SLA and generally covers hardware devices, such as Roku's players and streaming sticks. SLA § 10.11.

manufactured and sold pursuant to the SLA, and not to Roku OS, which is solely governed by the ILA.  Roku argues that Count Four therefore fails because it centers around Roku OS rather than Roku's physical devices.  Dolby reads Section 4.7 differently.  It sees the audit requirement for "all products that perform or embody Licensor intellectual property" as encompassing Roku OS, because the lowercase "p" in "products" was meant to be separate from and broader than the defined term "Licensed Products."  Dolby explains that this distinction was intentional, as it allows Dolby to discover the use of its technology in a licensee's other products.  Opp. 21.

As both parties have proffered reasonable interpretations, the scope of Section 4.7 is uncertain.  On the one hand, the provision's use of the lower-cased "products" as opposed to the defined "Licensed Products" strongly suggests that they have different meanings.  This interpretation is bolstered by the fact that Section 4.7 requires Roku to maintain information concerning all products containing Dolby's intellectual property "*including but not limited to* all information required for [Roku's] payment and reporting obligations under [the SLA]."  SLA § 4.7 (emphasis added).  Such broad, inclusive language contemplates that the information on Roku's "products" would be used for purposes outside of verifying Roku's compliance with royalty payments for Licensed Products.  On the other hand, the Court is hesitant to read such a broad audit obligation into the SLA.  The parties are sophisticated entities, presumably with experienced contract counsel, and it is difficult to believe that they snuck in or missed the far-reaching implications of Section 4.7.

That being said, clarifying the provision's terms to resolve this ambiguity would require the Court to engage in contract interpretation, a factual determination unsuitable for a motion to dismiss.  *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020).  Whether Roku OS is subject to the audit requirement in Section 4.7 therefore remains to be seen on a more developed record.  At this stage, Dolby has sufficiently alleged a violation of Roku's audit obligations under Section 4.7 of the SLA.  Roku's motion to dismiss Count Four is therefore **DENIED**.

Case No.: 24-cv-04660-EJD
ORDER GRANTING IN PART MOTION TO DISMISS
13

**B.        Copyright Infringement (Count Five–Six)**

17 U.S.C. § 411(a) states that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." [5]  The United States Supreme Court has clarified that registration under this statute occurs when the Copyright Office actually reviews and registers the copyright, not when a claimant delivers the required application, materials, and registration fees.  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).  The Supreme Court emphasized that, absent limited circumstances, "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."  *Id.* at 301.  In other words, a copyright owner may only sue for infringement after the Copyright Office grants registration.  The Supreme Court reasoned that permitting copyright claimants to sue before obtaining registration of the work would render much of the Copyright Act's statutory scheme superfluous.  *Id.* at 303.

Here, Counts Five and Six of the FAC assert infringement of 15 copyrighted works.  Ten of those works (collectively, the "Added Works") were registered on August 9, 2024, eight days after the initial filing of this lawsuit on August 1, 2024.  Roku seeks dismissal of the infringement claims based on the Added Works, arguing that Dolby may not amend its complaint to include infringement claims that were premature at the time of filing the original complaint.  Dolby counters that the Copyright Office granted registration before Dolby filed the FAC, which is the first time it asserts infringement of the Added Works, so it has satisfied § 411(a)'s registration requirement.

The parties raise an unresolved issue.  Since *Fourth Estate*, the question of whether a plaintiff who files suit before registration of a copyright can cure that defect by amending the complaint after registration is complete has not been squarely addressed by the Supreme Court or the Ninth Circuit.  *See Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, 2019 WL

---

[5] § 411(a) contains an exception that allows a suit for infringement if the Copyright Office *denies* registration.  Because that exception is not relevant here, the Court focuses its analysis on the requirement that registration be granted before institution of a civil lawsuit.

1    9050859, at *2–3 (C.D. Cal. Aug. 5, 2019).  The question presented in this case is even narrower:

2    whether a plaintiff who files suit for infringement of registered copyrights may amend the

3    complaint to include *additional* copyrights that were not registered at the time of the initial

4    complaint but were granted registration before the amended complaint was filed.  District courts

5    have taken different approaches when faced with this situation.  *Compare Roblox Corp. v.*

6    *WowWee Grp. Ltd.*, 660 F. Supp. 3d 880, 890 (N.D. Cal. 2023) ("[T]he Court agrees with other

7    courts in this district that permitting plaintiffs to cure their failure to register its copyright before

8    suing would undermine *Fourth Estate*.") *with Lickerish Ltd. v. Maven Coal., Inc.*, 2021 WL

9    3494638, at *1 (C.D. Cal. Jan. 29, 2021) (holding that the policy favoring amendment permits

10   amendment of an existing copyright infringement lawsuit to add newly-registered copyright as

11   long as the copyright issued before the amendment).

12         While this is a close issue, the Court agrees with those courts that have concluded that

13   *Fourth Estate* "does not preclude the amendment of an existing lawsuit to add a newly asserted

14   claim for copyright infringement as long as the copyright issued before the amendment asserting

15   the infringement claim was filed." *E.g.*, *Lickerish*, 2021 WL 3494638, at *1; *Philips N. Am. LLC*

16   *v. KPI Healthcare, Inc.*, 2020 WL 3032765, *3 (C.D. Cal. 2020); *see also Ubiquiti Networks, Inc.*

17   *v. CambiumNetworks, Inc.*, 2019 WL 6034116, at *1 (N.D. Ill. Nov. 14, 2019).  To hold otherwise

18   would favor form over function.  If Dolby's copyright infringement claims as to the Added Works

19   were dismissed without prejudice, Dolby would inevitably file a separate suit asserting

20   infringement of those works based on the same facts present here.  Given the similarities in facts

21   and legal issues, that suit would likely be consolidated back into this one.  The Court fails to see—

22   and Roku does not explain—why this procedural exercise is necessary.  In the end, the parties

23   would be in the same position they would have been had the Court denied dismissal, with the only

24   difference being that Dolby would have paid a second filing fee to commence the separate action.

25   Roku acknowledges this inefficiency but cites a case from the Southern District of New York for

26   the proposition that such inefficiencies exist in any given case.  Mot. 27 (citing *Malibu Media,*

27   *LLC v. Doe*, 2019 WL 1454317, at *3 (S.D.N.Y. Apr. 2, 2019)).  But *Malibu Media* involved an

1    initial complaint asserting premature causes of action for copyright infringement that the plaintiffs

2    attempted to cure through amendment.   Here, in contrast, Dolby's original complaint asserted

3    claims of infringement for only copyrights that were registered as of the time of filing.

4    Inefficiency from requiring a plaintiff to wait until registration is granted before filing an initial

5    suit for copyright infringement is different from that in requiring a plaintiff to file a second,

6    separate suit that will end up back in the original action.

7        In so holding, the Court realizes that it departs from others in this District.  It does so based

8    on a different interpretation of the Supreme Court's holding.  *Fourth Estate* requires copyright

9    registration before "pursuing an infringement claim in court," 586 U.S. at 301, or "suing for

10   infringement."  *Id.* at 302.  This broad language is not confined to the filing of an initial complaint.

11   Similarly, § 411(a)'s requirement that registration be made before an action has been "instituted"

12   is not incompatible with filing an amended complaint to add claims for recently registered

13   copyrights for the first time.  Other courts have read the two authorities more narrowly.  *E.g.*, *Kifle*

14   *v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) ("By tying the registration

15   requirement to when a 'civil action' is 'instituted,' the plain language of § 411(a) refers to the

16   beginning of a lawsuit, not the filing of an amended pleading.").  But under the circumstances

17   present here, the Court is not persuaded that requiring Dolby to file a separate action that will end

18   up back in the original action is what the Supreme Court intended in *Fourth Estate*, nor what

19   Congress intended in the Copyright Act.  Accordingly, Roku's motion to dismiss Counts Five and

20   Six as to the Added Works is **DENIED**.

21        **C.     Patent Infringement (Count Seven)**

22        In Count Seven, Dolby asserts claims of direct, induced, and contributory infringement of

23   U.S. Patent No. 6,339,757 (the "'757 Patent").  Dolby alleges that Roku infringed the '757 Patent

24   by including in Roku OS 9.0 an implementation of audio compression technology that purports to

25   comply with the AC-3 Standard.  FAC ¶¶ 74, 181.  Dolby also claims that Roku did so willfully,

26   entitling Dolby to treble damages.  Roku's motion to dismiss argues that the induced, contributory,

27   and willful infringement claims are insufficiently plead.  Mot. 28–32.  For the reasons stated

28   Case No.: 24-cv-04660-EJD

United States District Court
Northern District of California

below, Roku's motion to dismiss the induced, contributory, and willful infringement claims in Count Seven is **GRANTED**.

### 1. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party's] acts constituted infringement." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (alterations in original); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (same). Direct evidence is not required to prove specific intent; circumstantial evidence may suffice. *Id.* (citing *MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)).

Dolby's theory of induced infringement boils down to the following. In 2014, Dolby put Roku on notice of the '757 Patent. FAC ¶ 78. In 2018, Roku released Roku OS 9.0 to run on several of its streaming players. *Id.* ¶ 181. Roku OS 9.0 included an implementation of audio compression technology that purported to comply with the AC-3 Standard. *Id.* The '757 Patent is essential to the AC-3 Standard, meaning that the patent covers every compliant implementation of the AC-3 Standard. *Id.* ¶ 182. By including an implementation of the AC-3 Standard in Roku OS 9.0, Roku knew that end-users would invariably infringe the '757 Patent and specifically intended that result. *Id.* ¶¶ 182–83.

Roku argues that the foregoing allegations in the FAC are insufficient to meet either element of an induced infringement claim. As to specific intent, Roku contends that alleging Roku encouraged users to infringe "[b]y disseminating marketing materials, providing user and technical manuals relating to the Accused Products, and other acts," is not enough. *Id.* ¶¶ 187, 189. Other courts in this District have held that "passing references to user manuals guides, and support articles, without ever saying what those materials contain . . . [are] wholly inadequate for

1    an inference of specific intent." *Hypermedia Navigation LLC v. Google LLC*, 2019 WL 1455336,

2    at *2 (N.D. Cal. Apr. 2, 2019) (cleaned up); *CAP Co. v. McAfee, Inc.*, 2015 WL 3945875, at *3

3    (N.D. Cal. June 26, 2015).  This is because such allegations do not detail *how* the accused

4    infringer's instructions would lead the end user to infringe.  *Hypermedia*, 2019 WL 1455336, at

5    *3.  The same courts noted, however, that even general allegations of marketing materials and

6    manuals may be sufficient when paired with "examples where the accused infringer advertised

7    benefits that can be achieved only through use of the asserted patent."  *Id* at *2; *CAP Co.*, 2015

8    WL 3945875, at *5.  Indeed, this Court previously distinguished *Hypermedia* and found specific

9    intent to be adequately plead on that basis.  *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,

10   677 F. Supp. 3d 1079, 1086–87 (N.D. Cal. 2023).  Dolby attempts to avail itself of this exception,

11   arguing that instructing users how to infringe is unnecessary for specific intent because Roku OS

12   9.0 infringes "as a matter of course."  Opp. 28.  But that is not enough.  The FAC is devoid of

13   allegations that Roku advertised benefits that could only be obtained by practicing the '757

14   Patent—*i.e.*, compliance with the AC-3 standard.  The closest Dolby comes to doing so is alleging

15   that Roku advertised the inclusion of Dolby technologies, including Dolby Audio,[6] in its streaming

16   devices.  FAC ¶ 44.  Dolby does not allege that Roku specifically advertised the ability of its

17   devices or Roku OS to comply with the AC-3 Standard, which can only be achieved by infringing.

18   Dolby's allegations as to the knowledge of infringement prong are also deficient.  Dolby

19   argues that Roku's awareness of the '757 Patent and the fact that the patent covers all compliant

20   implementations of the AC-3 Standard are enough to show Roku knew users of Roku OS 9.0

21   would infringe, because infringement would be unavoidable.  However, this line of reasoning

22   relies on Roku's knowledge that the '757 Patent is standard-essential.  Dolby does not point to any

23   allegation in the FAC that suggests that Roku knew or should have known of the '757 Patent's

24   essentiality, nor can the Court discern any.  *See id.* ¶¶ 182–90.  Accordingly, Dolby's induced

25   infringement claim is not adequately plead.

26

27   ───────────────────
     [6] From what the Court can discern, it is Dolby Digital, not Dolby Audio, that is the technology
     compliant with the AC-3 standard.  *See* FAC ¶ 75.

28   Case No.: 24-cv-04660-EJD
     ORDER GRANTING IN PART MOTION TO DISMISS

### 2.    Contributory Infringement

Whoever sells or offers to sell an apparatus for use in practicing a patented method, knowing it to be "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).  To state a claim for contributory infringement, a complaint must adequately allege "(1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial non-infringing use."  *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 47 (Fed. Cir. 2024) (quoting *Bio-Rad Lab'ys., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021)).

The same allegations pertaining to the knowledge prong of Dolby's induced infringement claim apply to the first two elements of Dolby's contributory infringement claim.  *See id.*  For the same reasons discussed above, Dolby has failed to satisfy the knowledge element for contributory infringement.  Dolby's contributory infringement claim has not been adequately plead, and the Court need not reach the issue of whether the accused product is a staple article or commodity of commerce suitable for substantial non-infringing use.

### 3.    Willful Infringement

The Patent Act permits courts to award treble damages for willful patent infringement.  35 U.S.C. § 284.  The Supreme Court cautions that enhanced damages are "generally reserved for egregious cases of culpable behavior" that is "characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104 (2016).  To establish willfulness, the plaintiff must plausibly allege that the accused infringer had both knowledge of the infringed patent and knowledge of infringement.  *MasterObjects, Inc. v. Amazon.com, Inc.*, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021).  The plaintiff's allegations must also at least raise a plausible inference that the defendant had a specific intent to infringe.

Here, Dolby alleges that "[w]ith actual notice of the '757 Patent, Roku proceeded to internally test and distribute Roku OS 9.0 and the AC-3 implementation," FAC ¶ 79, and that

1    "Roku's . . . acts of infringement were willful, and without any reasonable basis for believing it

2    had the right to engage in the infringing conduct," *id.* ¶ 192.  However, for reasons already

3    discussed, these allegations are insufficient to show that Roku specifically intended to infringe the

4    '757 Patent.

5      Perhaps recognizing this weakness, Dolby adds that Roku's attempts to conceal its alleged

6    infringement are further evidence of willfulness.  Opp. 31.  Dolby compares Roku's refusal to

7    decrypt Roku OS and its misrepresentations, *see* FAC ¶¶ 80–93, with the misconduct addressed in

8    *PACT XPP Techs., AG v. Xilinx, Inc.*  2013 WL 4801885, at *3 (E.D. Tex. Aug. 30, 2013).  There,

9    the defendant knew of plaintiff's mistaken belief that defendant's products were non-infringing

10   and intentionally did not correct the misunderstanding in an effort to conceal its infringement.  *Id.*

11   This concealment argument is a closer call.  The Court agrees that, taking the allegations in the

12   FAC as true, Roku's misrepresentations and lack of transparency as to Roku OS could arouse

13   suspicion.  But it does not necessarily follow that Roku engaged in such conduct because it knew

14   that its products infringed Dolby's patent.  The FAC does not make clear that Roku knew it was

15   infringing the '757 Patent, so the Court cannot infer that Roku intended to conceal infringement.

16   Without more, Dolby has failed to adequately allege willful infringement.

17     **D.**  **Negligent Misrepresentation and Fraudulent Concealment (Counts Eight and Nine)**

18     Finally, Roku argues that Dolby's claims of negligent misrepresentation and fraudulent

19   concealment are barred by the economic loss rule.  The economic loss rule bars tort recovery for

20   purely economic loss arising from a breach of contract, unless the claimant can demonstrate

21   violation of an independent duty arising in tort.  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188,

22   1191 (9th Cir. 2021), *certified question answered*, 17 Cal. 5th 1 (2024) (quoting *Robinson*

23   *Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).  Roku contends that the FAC alleges

24   neither harm independent of alleged breaches of the ILA and SLA nor a violation of an

25   independent duty arising in tort.  Mot. 24.

26     Dolby asserts two arguments in opposition.  First, Dolby claims that the economic loss rule

United States District Court
Northern District of California

Case No.: 24-cv-04660-EJD
ORDER GRANTING IN PART MOTION TO DISMISS

1    typically applies only to contracts for the sale of goods, which are not the type of contracts at issue

2    here.  Opp. 23.  While this may be true as a general notion, there is no per se rule confining

3    application of the economic loss rule to contracts for the sale of goods.  The sole authority Dolby

4    relies on merely observes that the rule is usually inapplicable to service contracts because those

5    agreements give rise to an independent duty of care to perform in a competent and reasonable

6    manner.  *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014)

7    (citing *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 770 (1997)).

8            Second, Dolby argues that fraud may still be independently actionable, even when it

9    concerns a contract.  To state an independent claim for fraudulent misrepresentation and

10   concealment, the plaintiff must plausibly allege that (1) "the elements of the [fraud claim] can be

11   established independently of the parties' contractual rights and obligations," and (2) "the tortious

12   conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties

13   when they entered into the agreement."  *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024).

14   Roku does not dispute that the first element is met.  Instead, Roku argues that Dolby has not pled

15   "physical damage or personal injury beyond the economic loss caused by the contractual breach."

16   *Id.* at 44.  Dolby counters that the separate tort damages it alleges include "delay in [] receiving

17   money that it was owed," "inefficiencies created through wasted time and effort that Dolby

18   employees spent on the audit," and "other issues in dealing with Roku."  Opp. 23.

19          None of the harms Dolby claims is non-economic loss.  The only specific injury Dolby

20   alleges in the FAC is delayed assertion of its contractual rights to recover unpaid royalties.  FAC ¶

21   207.  Dolby fails to allege how this delay caused it injury beyond the accrual of overdue royalties.

22   *See LF Centennial Ltd. v. Z-Line Designs, Inc.*, 2019 WL 13136765, at *6 (S.D. Cal. Jan. 8, 2019)

23   ("To accept the notion that delayed payment under a contract and its attendant inconvenience

24   transforms a contract action into a fraud action would allow the exception to swallow the

25   economic loss rule."); *Alexsam Inc. v. Green Dot Corp.*, 2017 WL 2468769, at *5 (C.D. Cal. June

26   5, 2017).  Dolby's claim of wasted time and effort spent auditing Roku is similarly defective.

27   Dolby does not explain how costs incurred while attempting to audit Roku go beyond economic

28   Case No.: 24-cv-04660-EJD
     ORDER GRANTING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

loss arising from Roku's alleged breach of the SLA's audit provision. *See* FAC ¶ 146 ("Dolby has been damaged from Roku's failure to comply with the audit provisions between January 2021 and the present, including but not limited to incurring all of the audit-related fees and costs . . . ."). The remaining catch-all "other issues in dealing with Roku" is too vague to discern whether it constitutes a cognizable injury. Therefore, Roku's motion to dismiss Counts Eight and Nine is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Roku's motion to dismiss under Rule 12(b)(6) as follows:

1.  Dolby's claim for breach of representation and warranty (Count Two) is dismissed.

2.  Dolby's claim for breach of the implied covenant (Count Three) is dismissed.

3.  Dolby's claims for induced, contributory, and willful patent infringement (Count Seven) are dismissed.

4.  Dolby's claims for negligent misrepresentation and fraudulent concealment (Counts Eight and Nine) are dismissed.

Roku's motion is otherwise **DENIED**. All dismissals in this order are without prejudice and with leave to amend. If Dolby intends to file a second amended complaint, it shall do so within **twenty-one (21) days** of this order.

**IT IS SO ORDERED.**

Dated:  July 18, 2025

_____
EDWARD J. DAVILA
United States District Judge